280 N.J. Super. 570 (1995)
656 A.2d 43
F.A., P.A., AND M.N., M.A. & C.A., INFANTS BY THEIR GUARDIAN AD LITEM, P.A., PLAINTIFFS-RESPONDENTS,
v.
W.J.F., JR. & S.F., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1994.
Decided April 7, 1995.
*572 Before Judges MICHELS, KEEFE and HUMPHREYS.
Richard J. Mirra argued the cause for appellants (Boglioli, O'Mara, Reynolds & Mirra, attorneys; Mr. Mirra on the brief).
There was no brief filed on behalf of respondents.
Ann Marie Seaton, Deputy Attorney General, argued the cause for the New Jersey Division of Youth and Family Services as amicus curiae (Deborah T. Poritz, Attorney General, Mary C. Jacobson, Assistant Attorney General, of counsel, and Ms. Seaton on the brief).
The opinion of the court was delivered by HUMPHREYS, J.S.C. (temporarily assigned).
The critical issue in this case is the scope of the immunity afforded by a New Jersey statute, N.J.S.A. 9:6-8.13, to those who report suspected child abuse. We hold that immunity shall be broadly and liberally construed in favor of the reporting person. This accords with the clear legislative intent to protect those who report suspected child abuse and thereby to protect children.

I
The pertinent facts and procedural history can be summarized as follows. Plaintiffs are the parents of three children. Defendants are their neighbors. Defendant W.J.F., Jr., is an attorney who formerly represented plaintiffs and was also plaintiff F.A.'s business partner. Later, W.J.F., Jr., and F.A. were involved in litigation against each other in a number of matters.
In April of 1989, one of plaintiffs' children, three year old M.A., broke his leg. On March 8, 1990, W.J.F., Jr., anonymously called the Division of Youth and Family Services ("DYFS") and reported that he believed that M.A. was being abused by his parents. The next day a counselor from DYFS came to plaintiffs' home and informed P.A., the mother of M.A., that an anonymous report had been filed with DYFS accusing P.A. of child abuse in connection *573 with M.A.'s broken leg. On the same day, the DYFS counselor interviewed plaintiffs' other two children, M.N. and C.A., at school in the presence of an Assistant Principal.
The next day, W.J.F., Jr., called DYFS and sought to withdraw the complaint. DYFS, however, continued its investigation resulting in a report which contains some indications of child abuse. The DYFS counselor cautioned P.A. and F.A. against the use of "physical discipline, especially using an instrument." They agreed to refrain from such conduct, and DYFS closed the case on March 16, 1990.
Two months later, plaintiffs commenced this action seeking damages for defendants' reporting of the suspected child abuse. Plaintiffs charged defendants with: (1) intentional infliction of emotional distress, (2) libel and slander and (3) abuse of process. Defendants filed an answer denying the charges and asserting as defenses the confidentiality of a report of child abuse, N.J.S.A. 9:6-8.10a, and immunity from liability in making such a report, N.J.S.A. 9:6-8.13.
A judge in the Law Division denied defendants' motion to dismiss the complaint and granted plaintiffs' cross-motion to vacate a protective order regarding discovery. Leave to appeal was granted. Another part of the Appellate Division affirmed the order below and held that the statute, N.J.S.A. 9:6-8.13, did not afford absolute immunity from suit. F.A. by P.A. v. W.J.F., 248 N.J.Super 484, 591 A.2d 691 (App.Div. 1991).
The Appellate Division also stated that the defendants may be obliged in discovery to state the facts upon which they had reasonable cause to believe that M.A. had been subjected to child abuse and the reasons, if any, why such a report was not filed immediately. Id. at 490-91, 591 A.2d 691. The Appellate Division concluded that "[i]f these prerequisites are met, then defendants as reporters would be entitled to immunity from civil or criminal liability and the complaint would accordingly be subject to dismissal. Or, in the event of a factual dispute, defendants would be *574 entitled to have the[ir] credibility determined by a fact-finder in applying the statutory immunity." Id. at 491, 591 A.2d 691.
Thereafter discovery was conducted. Defendants later moved for summary judgment which was denied. The court below stated that (1) whether defendants had reasonable grounds to contact DYFS and (2) whether they did so immediately should be determined by a fact-finder. The court stated that "[t]he jury must look at all the circumstances surrounding what occurred in this particular case, the incidents toward the children, the accumulation of the incidents and the eventual reporting of them to determine whether or not the conduct of the defendant was reasonable or defendants were reasonable. I just can't make those decisions on motions for summary judgment."
We granted defendants' motion for leave to appeal the trial court's denial of their motion for summary judgment. Plaintiffs did not file an appellate brief and did not appear at oral argument of the interlocutory appeal.
DYFS filed a brief as amicus curiae urging that we reconsider the earlier decision in this case, F.A. by P.A., supra. Specifically, DYFS contends that the immunity provision should be construed as follows: (1) a person has reasonable cause to believe that a child was subject to child abuse if there are any facts from which it is objectively reasonable for a person, based upon the person's circumstances, training and experiences, to believe that a child has been abused; (2) a finding or substantiation by DYFS following an investigation that a child was abused or neglected should give rise to a presumption that the reporter had reasonable cause to believe that the child was abused; (3) if a reporter of child abuse can "articulate any fact" supporting the report, then discovery should be limited and summary judgment entered in the reporter's favor; and (4) where reasonable cause can be demonstrated by affidavits or reports, then immunity from liability should be extended to immunity from pre-trial discovery and the costs of trial.

*575 II
Child abuse used to be called an ugly secret. It remains ugly but it is no longer a secret.
Child abuse is not a phenomenon of the Twentieth Century. Children have been physically traumatized, neglected, molested and deprived since the dawn of man's earliest recorded history. It was not until 1962, however, that it was formally identified as an observable, clinical condition, and, it was not until the early 1970's that America accepted it as a problem of devastating proportions.
[Brian G. Fraser, A Glance at the Past, a Gaze at the Present, a Glimpse at the Future: A Critical Analysis of the Development of Child Abuse Reporting Statutes, 54 Chi.-Kent L.Rev. 641 (1978)][1]
The catalyst for reform was an article published in 1962 in the Journal of the American Medical Association entitled "The Battered-Child Syndrome." C. Henry Kempe et al., The Battered-Child Syndrome, 181 JAMA 17 (1962). The authors had checked with hospitals and district attorneys and concluded that the "syndrome" was a frequent cause of permanent injury or death for children. See Alan Sussman, Reporting Child Abuse: A Review of the Literature, Fam.L.Q., Fall 1974, at 245-46 (Reporting Child Abuse).
Also occurring in 1962 was a conference of professionals and experts convened by the Children's Bureau of the United States Department of Health, Education and Welfare. Id. at 246-47. The conference recommended the enactment of legislation requiring the mandatory reporting of child abuse. Id. at 247.
The states quickly responded. Within four years all the states had enacted child abuse reporting statutes. See Child Abuse and Neglect, supra, 50 N.C.L.Rev. at 332. The first statutes ordinarily required only physicians to report suspected child abuse. Later amendments added other medical and also non-medical persons. Many jurisdictions, including New Jersey, require everyone to report. N.J.S.A. 9:6-8.10. See also Danny R. Veilleux, Annotation, Validity, Construction, and Application of State Statute *576 Requiring Doctor or Other Person to Report Child Abuse, 73 A.L.R.4th 782, 789-91 (1989); 2 Legal Rights of Children, § 16.01 et seq. (Kramer ed., 2d ed. 1994); Robert F. Breslin, Jr., Note, A Case For The Defenseless, 1 Seton Hall L.Rev. 134 (1970).
Some states, including New Jersey, penalize those who fail to report. N.J.S.A. 9:6-8.14. See also 73 A.L.R.4th, supra, at 791-92. To qualify for federal aid, states must provide for the reporting of child abuse and furnish immunity to the reporters. Id. at 790, 794; 42 U.S.C.A. § 5103.
Over the years the number of reported child abuse cases increased dramatically. A Glance at the Past, supra, 54 Chi.-Kent L.Rev. at 641. At present more than one million reports are made annually. 2 Legal Rights of Children, supra, § 16.14. However, many experts believe that the reported cases are only the tip of the iceberg. Child Abuse and Neglect, supra, 50 N.C.L.Rev. at 334; Debra Whitcomb, National Institute of Justice, When the Victim Is A Child at 2 (2d ed. 1992). See also A Glance at the Past, supra, 54 Chi.-Kent L.Rev. at 646. Child abuse has been said to be "a major, if not the salient, condition encountered in the pediatric patient today." Rowine Hayes Brown & Richard B. Truit, Civil Liability in Child Abuse Cases, 54 Chi.-Kent L.Rev. 753 (1978).
While the exact incidence of child abuse may be uncertain, what is certain is that child abuse is a widespread malignancy in our society.

III
New Jersey enacted its reporting statute in 1964. The Act originally provided for mandatory reporting only by physicians and hospitals. 1964 N.J. Laws 30. In 1971, the New Jersey Legislature enacted the forerunner of the present statute, 1971 N.J. Laws 437, and expanded the reporting requirement to all persons.
*577 The statute initially required the report to be made "promptly." Ibid. The statute was amended in 1987 to substitute a requirement that the report be made "immediately," N.J.S.A. 9:6-8.10.
The purpose of the Act is:
to provide for the protection of children under 18 years of age who have had serious injury inflicted upon them by other than accidental means. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected.
[N.J.S.A. 9:6-8.8.]
See also In re Phillips, 141 N.J. Super. 73, 77-78, 357 A.2d 289 (App.Div. 1976).
The Act provides in pertinent part that:
Any person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Youth and Family Services by telephone or otherwise. Such reports, where possible, shall contain the names and addresses of the child and his parent, guardian, or other person having custody and control of the child and, if known, the child's age, the nature and possible extent of the child's injuries, abuse or maltreatment, including any evidence of previous injuries, abuse or maltreatment, and any other information that the person believes may be helpful with respect to the child abuse and the identity of the perpetrator.
[N.J.S.A. 9:6-8.10.]
The Act further provides that the report shall be "kept confidential" and may only be disclosed under certain specified circumstances. N.J.S.A. 9:6-8.10a. In addition, a person who knowingly fails to report an act of child abuse "having reasonable cause to believe an act of child abuse has been committed, is a disorderly person." N.J.S.A. 9:6-8.14.
With respect to immunity, the Act provides:
Anyone acting pursuant to this act in the making of a report under this act shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such person shall have the same immunity with respect to testimony given in any judicial proceeding resulting from such report.
[N.J.S.A. 9:6-8.13.]
To summarize, the Act requires that any person having reasonable cause to believe that a child has been abused is under a mandatory duty to report that child abuse to DYFS. N.J.S.A. *578 9:6-8.10. The report is confidential. N.J.S.A. 9:16-8.10a. Failure to so report is a disorderly persons offense. N.J.S.A. 9:6-8.14. A person reporting pursuant to the Act has "immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." N.J.S.A. 9:6-8.13.
The Appellate Division in the earlier appeal in this case concluded that the Act does not afford immunity from suit. F.A. by P.A., supra, 248 N.J. Super. at 490, 591 A.2d 691. We agree. However, as set forth in this opinion, we construe the Act in such a manner as to carry out the intention of the Legislature to protect persons who report suspected child abuse. The Legislature has clearly expressed its resolve to firmly address this terrible problem by encouraging the reporting of suspected child abuse. The Legislature has sought to accomplish this by requiring every person to report suspected child abuse, by providing that failure to report is a disorderly persons offense and by affording immunity from liability for the reporters. That legislative resolve can easily be frustrated if complying with the duty to report can subject the reporter to costly and protracted civil litigation, as unfortunately occurred here.
To knit this tear in the fabric of our child protection laws, we liberally construe the statutory grant of immunity as follows. (1) An objective test will be used to determine whether a report of suspected child abuse is made pursuant to the statute. The test will be whether a reasonable person would have reasonable cause to believe that a child has been abused. (2) Immunity will attach if an investigation by DYFS shows that there was a reasonable basis to suspect child abuse and the report was made immediately. (3) Immunity will not be withheld merely because the reporter did not act "immediately." The requirement of reporting "immediately" was intended to protect children from the potentially serious consequences of delay. We glean no legislative intent that the failure to act immediately will necessarily strip immunity from the reporter. (4) A trial court should not hesitate to place appropriate restrictions on discovery. Trial courts are *579 also encouraged to use summary judgment procedures. Thus, immunity issues will be addressed and determined speedily without extensive and burdensome discovery and trial preparation.
The use of an objective test should also facilitate speedy determination by way of summary judgment. Objective findings do not generally turn on such issues as intent, motive, credibility and the like, which often preclude the granting of summary judgment. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954); A Glance at the Past, supra, 54 Chi.-Kent L.Rev. at 659; Reporting Child Abuse, supra, Fam.L.Q. at 277; May v. S.E. Wyoming Mental Health Ctr., 866 P.2d 732, 738 (Wyo. 1993). See also Maressa v. New Jersey Monthly, 89 N.J. 176, 196, 445 A.2d 376 (1982), cert. denied, 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982) (encouraging trial courts to bring defamation cases to a speedy end through summary judgment procedures). See also Ziemba v. Riverview Medical Center, 275 N.J. Super. 293, 645 A.2d 1276 (App.Div. 1994).
We find nothing in the New Jersey Act which is contrary to the foregoing safeguards. The statutory language is plain and succinct. See Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992). Its clear and unequivocal words evince a strong legislative intention to afford broad protection to reporters of child abuse. This decision furthers that intention. See Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993).

IV
Our decision is consistent with decisions of other jurisdictions construing similar immunity statutes. Some jurisdictions go farther and provide absolute immunity from suit. California has construed its immunity statute to provide absolute immunity for mandatory reporters of child abuse. Ferraro v. Chadwick, 221 Cal. App.3d 86, 270 Cal. Rptr. 379, 385 (1990); Storch v. Silverman, 186 Cal. App.3d 671, 231 Cal. Rptr. 27, 31 (1986). Mandatory reporters in California are absolutely immune from liability even if they make a negligent or knowingly false report. Storch, supra, *580 231 Cal. Rptr. at 27-31. See Krikorian v. Barry, 196 Cal. App.3d 1211, 242 Cal. Rptr. 312, 315-316 (1987) (absolute immunity granted to mandatory reporter of child abuse even where such report is false or reckless); Thomas v. Chadwick, 224 Cal. App.3d 813, 274 Cal. Rptr. 128, 133 (1990) (intentionally false report by a mandated reporter is immunized).
In Alabama, persons reporting suspected child abuse are afforded absolute immunity from suit. Harris v. City of Montgomery, 435 So.2d 1207, 1212 (Ala. 1983). The Ohio Appellate Courts have held that its immunity statute provides an absolute grant of immunity to a reporter of child abuse, regardless of whether the report was made in good faith. Hartley v. Hartley, 42 Ohio App.3d 160, 537 N.E.2d 706, 707, motion to certify overruled, 38 Ohio St.3d 717, 533 N.E.2d 787 (1988). See also Cudlin v. Cudlin, 64 Ohio App.3d 249, 580 N.E.2d 1170 (1990); Criswell v. Brentwood Hospital, 49 Ohio App.3d 163, 551 N.E.2d 1315 (1989).
Some jurisdictions provide a qualified immunity to reporters of suspected child abuse. Wyoming has a reporting statute similar to New Jersey's, except that it does not provide a criminal penalty for the failure to report. The Wyoming courts have determined that the statute affords a qualified immunity by protecting those who report in good faith. Elmore v. Van Horn, 844 P.2d 1078, 1082 (Wyo. 1992).
An Illinois appellate court decided that its immunity statute did not provide absolute immunity, but rather a "good faith immunity." Lehman v. Stephens, 148 Ill. App.3d 538, 101 Ill.Dec. 736, 744-45, 499 N.E.2d 103, 111-12 (1986), appeal denied, 113 Ill.2d 576, 106 Ill.Dec. 48, 505 N.E.2d 354 (1987). However, the Illinois court also concluded that its immunity statute provides a rebuttable presumption of good faith. Ibid. (A substantial number of other states presume good faith as well. See A Glance at the Past, supra, 54 Chi.-Kent L.Rev. at 665.) The Illinois court reasoned that parental autonomy with respect to children is not absolute:

*581 While parents enjoy an inherent right to the care and custody of their own children, the State, in its recognized role as parens patriae, is the ultimate protector of the rights of minors. The State is substantially interested in providing for their health, safety, and welfare, and may properly step in to do so when appropriate.
[Lehman, supra, 101 Ill.Dec. at 742, 499 N.E.2d at 109]
Given the potentially devastating consequences of continued, undetected child abuse, as well as the inherent difficulty in uncovering such cases, State authorities ... are concerned with having available procedures to detect abuse or neglect as quickly and accurately as possible. "Procedures which uncover abuse after the fact, no matter how accurate, are of little value."
[Id. 101 Ill.Dec. at 743, 499 N.E.2d at 110]
The Pennsylvania courts also presume that a reporter acts in good faith. See Heinrich v. Conemaugh Valley Memorial Hospital, 436 Pa.Super. 465, 648 A.2d 53, 58 (1994). "General language" regarding a reporter's bad motives or malice will not overcome the statutory presumption. Ibid. The good faith of the reporter must be judged against an objective standard rather than considering the reporter's alleged bad motives and maliciousness. Ibid. Good faith may then be determined as a matter of law rather than as a question of fact to be determined by the fact finder. Id. 648 A.2d at 59.
With respect to summary judgment procedures in child abuse reporting cases, we concur with the following views of the Wyoming Supreme Court:
The well-known standard of review for summary judgments has only minimal significance here. Rather, the summary judgments in this case can be upheld on the basis of immunity. Therefore, we need not search the record to see if there are disputed material facts, nor need we examine in detail the materials in support of summary judgment or in opposition.
[May, supra, 866 P.2d at 738]
In L.A.R. v. Ludwig, 170 Ariz. 24, 821 P.2d 291, 293 (App. 1991), the court upheld a summary judgment dismissing a complaint against the reporter of child abuse. The court stated that the phrase "reasonable grounds" in its immunity statute meant "any facts from which one could reasonably conclude that a child had been abused." Id. 821 P.2d at 294. Reasonable grounds the court stated is a "low standard." Ibid.
*582 The decisions are not all in accord. See generally 73 A.L.R.4th, supra, at 782-92. However, we are satisfied that our decision is consistent with the prevailing view; especially in those states whose reporting statutes, like New Jersey's, require all persons to report and provide a penalty for the failure to report.

V
Applying the above safeguards to the facts here, we hold that immunity has attached. Defendants in their deposition testimony described a number of incidents which they had observed which are indicative of child abuse and neglect. The incidents include M.A. playing in the street unsupervised and plaintiff P.A. screaming and yelling at the children, hysterical and out of control. Defendants also had substantial grounds for their belief that M.A.'s broken leg was not caused by a fall but arose out of child abuse.
Defendants' deposition testimony coupled with the DYFS finding are more than sufficient for a reasonable person to conclude that defendants had reasonable cause to believe that child abuse had taken place. Immunity from liability has clearly attached. Summary judgment for the defendants is granted.
Reversed for the entry of summary judgment dismissing the complaint with costs.
NOTES
[1] For an excellent historical review of child abuse, see Mason P. Thomas, Jr., Child Abuse & Neglect Part I: Historical Overview, Legal Matrix and Social Perspectives, 50 N.C.L.Rev. 293 (February 1972).