## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 36535

| | | |
|---|---|---|
| GEORGE DAVIDSON, | ) | 2011 Opinion No. 2 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: January 26, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JESYCA HOOD DAVIDSON; BENJAMIN | ) | |
| PUCKETT; KATHY GUTHRIE; and JOHN | ) | |
| PRIOR, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy Hansen, District Judge.

Orders of the district court granting motions to dismiss and granting summary judgment, <u>affirmed</u>; order granting partial summary judgment, <u>reversed and case remanded.</u>

George Davidson, Nampa, pro se appellant.

Troupis Law Office, P.A.; Christ T. Troupis, Eagle, for respondents Jesyca Hood Davidson and Kathy Guthrie.

Michael E. Duggan, Nampa, for respondent Benjamin Puckett.

John Prior, Nampa, pro se respondent.

_____

GRATTON, Chief Judge

George Davidson (Davidson) appeals from the district court's orders dismissing his complaint as to respondent John Prior (Prior); granting summary judgment as to respondent Benjamin Puckett (Benjamin), and partial summary judgment as to respondent Jesyca Hood Davidson (Jesyca); as well as dismissing the remainder of his claims against respondents Jesyca and Kathy Guthrie (Kathy).

# I.

## FACTS AND PROCEDURAL BACKGROUND

On February 19, 2008, Davidson, acting pro se, filed a complaint against Jesyca (Davidson's former daughter-in-law), Benjamin (Jesyca's boyfriend), Kathy (Jesyca's mother), and Prior (Jesyca's divorce attorney), alleging specific claims of intentional infliction of emotional distress, abuse of process, slander per se, conspiracy, and negligence. All of the claims stem from Davidson's assertion that these individuals all participated, to some extent, in falsely accusing him of child molestation and perpetuating those allegations in court and in public.

Respondents maintain that on July 17, 2007, Jesyca was at her apartment with her boyfriend, Benjamin, and her two daughters, S.D. and R.A.D., who were ages three and two at the time. According to Jesyca, her daughter, S.D., exposed her genital area. Benjamin asked S.D. who taught her to do that, and she replied "Grandpa," which they inferred meant Davidson. Jesyca claimed to have knowledge that S.D.'s father, Renato, who is Jesyca's ex-husband and Davidson's son, had been molested by Davidson when he was a child and that this knowledge led her to believe that S.D. had also been molested by Davidson.

After conferring with Kathy, Jesyca and Benjamin took S.D. to the hospital for a medical examination. The examination did not reveal physical signs of abuse. However, Jesyca claimed that she remained concerned that S.D.'s safety was at risk if left unattended with Davidson. Based upon her concerns, Jesyca, along with Benjamin, filed a report of suspected child abuse with the Canyon County Sheriff's office on July 19, 2007. The sheriff's office investigated the allegations and forwarded the case to the prosecuting attorney's office, which ultimately decided not to proceed with charges against Davidson.

During the time period involving the incident with S.D., Jesyca and Renato were engaged in a joint custody and visitation dispute with respect to their two children. The allegations that Davidson had abused his son, Renato, and his granddaughter, S.D., were presented during hearings on the custody and visitation dispute. On July 24, 2007, Jesyca filed two sworn petitions for protection orders against Davidson and Renato, again describing her account of the incident with S.D. and stating that "[Davidson] has been known to molest his son [Renato]." Jesyca requested supervised visitation because she was concerned that Renato would take the children to Davidson's home. Both petitions were dismissed.

In his complaint, Davidson claimed that respondents filed a false report of sexual abuse with the intent to "cause serious harm to [Davidson]," that they "attempted to use the false allegations to coerce [Davidson] into dropping a small claims action and to coerce [Davidson's] son to drop a Motion to Modify Child Custody," that they "spread these false allegations in public" knowing that they were untrue thereby causing damage to Davidson's reputation, that they acted in concert with one another in order to "personally destroy [Davidson]," and that they were negligent in breaching their statutory duties "to not make false allegations of a crime they knew or should have known had never taken place."

Respondent Prior filed a motion to dismiss on grounds that Davidson failed to properly serve him, Idaho Rules of Civil Procedure 12(b)(5) and 4(d)(2), and that Davidson failed to state a claim upon which relief could be granted, I.R.C.P. 12(b)(6). At the hearing held on the motion to dismiss, the district court stated that it would take the I.R.C.P. 12(b)(6) issue under advisement, but indicated that it intended to grant the motion to dismiss with respect to I.R.C.P. 12(b)(5) and 4(d)(2). The court subsequently issued a written decision granting Prior's motion on both grounds. Davidson filed a notice of appeal, which was conditionally dismissed. Thereafter, Davidson sought a permissive appeal, which was ultimately dismissed. Davidson filed a motion for leave to amend his complaint to include Prior again as a defendant and raising new allegations against him, as well as raising a claim for punitive damages against the other respondents. The court granted the motion with respect to adding a claim for punitive damages, but denied the motion to again include Prior as a party.

The remaining respondents, Jesyca, Kathy, and Benjamin, filed motions for summary judgment with accompanying affidavits. Davidson filed an opposition to the motions, along with supporting affidavits and exhibits. At a hearing held on the motion, the district court indicated that in reviewing Davidson's claim, it noted that it was based, in part, upon Idaho Code § 16-1607, a code provision under the Child Protective Act (CPA). The court indicated that I.C. § 16-1607 provides that a cause of action arising under that provision is to be tried to the court rather than a jury. The court stated that its purpose for raising the issue was to notify the parties and to request briefing on the issue of "whether or not there is a right to a jury trial under those provisions."

After receiving extensive briefing from the parties on the issue, the court issued its decision, acknowledging that Davidson was entitled to a jury trial. However, the court agreed

3

with the parties that the question of immunity, pursuant to I.C. § 16-1606, was for the court to decide rather than a jury and deemed the summary judgment motion fully submitted for decision.

The court subsequently issued a written decision, concluding that Jesyca and Benjamin had reported allegations of abuse in good faith and, thus, were immune from suit pursuant to I.C. § 16-1606, regarding any statements made in relation to those reports. The court also concluded that because Kathy did not file a report pursuant to I.C. § 16-1605(1), she was not immune from suit. The court granted summary judgment as to Benjamin and partial summary judgment as to Jesyca. The court determined, however, that there were genuine issues of material fact with respect to whether Jesyca and Kathy made statements to persons not involved with the report, and denied summary judgment as to those statements.

Davidson filed a motion for reconsideration, which was denied. At a status conference held on the remaining claims, Davidson indicated that because the majority of his case had been dismissed, his remaining claims should be dismissed in order to allow him the opportunity to appeal. The court expressed its understanding of Davidson's request as being that the court would "simply dismiss the balance of the case but he would reserve the right to go ahead and appeal any decisions [the court] had made concerning immunity or probably any other issues that [the court] had addressed, as well." Respondents did not object to that request, and Benjamin's attorney requested that the dismissal be with prejudice. Davidson did not object. Therefore, the court granted Davidson's motion to dismiss with prejudice any remaining claims in the case. Davidson now appeals.

## II.

## ANALYSIS

### A. Dismissal of Claims Against Prior

At the hearing on the motion to dismiss, Prior argued, citing *Campbell v. Reagan*, 144 Idaho 254, 159 P.3d 891 (2007), that he was not properly served since Davidson had attempted to serve him by mailing a copy of the summons and complaint to his law office rather than personally serving him. Prior also asserted that Davidson's complaint should be dismissed pursuant to I.R.C.P. 12(b)(6) because Davidson's allegations were based upon statements Prior made during judicial proceedings, which he argued, were absolutely privileged under *Malmin v. Engler*, 124 Idaho 733, 864 P.2d 179 (Ct. App. 1993).

4

Davidson's primary argument on appeal is that the district court erred in relying upon *Malmin* in granting the motion to dismiss. He contends that if this Court agrees that the district court's reliance on *Malmin* was misplaced, it should also find that good cause exists to waive the six-month time limit for service and allow him on remand to re-serve Prior in person. Because we find the issue relative to service of process dispositive, we need not address Davidson's contention that the district court erred in granting the motion to dismiss on the basis of I.R.C.P. 12(b)(6).

### 1. Insufficiency of service of process

In response to Prior's argument that he had not been properly served, Davidson argued:

> The point of the process of service is that the person who is being sued knows they are being sued so that somebody doesn't come and start taking their property away from them sometime in the future and they have no idea what happened. He knows he was being sued, he was served at his office. He accepts process of service at his office.
> I pointed out in my objection that on behalf of my son, I served other papers there on him before and he accepted them. His secretary signs for them. So that argument, too, in my opinion is moot.

The district court rejected Davidson's argument, noting that "in this case there is absolutely no dispute that service of process was not compliant with Rule 4(d)(2) of the Rules of Civil Procedure." Because Davidson still had time to properly serve Prior, the court specifically acknowledged that granting a dismissal pursuant to I.R.C.P. 12(b)(5) and 4(d)(2) would not preclude Davidson from pursuing his legal action against Prior and, thus, he would not suffer any undue prejudice. The court also expressed its concern that if it were to accept Davidson's argument, it would be rendering the Idaho Rules of Civil Procedure meaningless. We agree.

Idaho Rule of Civil Procedure 4(d)(2) sets forth the requirements for service upon individuals, as follows:

> Upon an individual . . . by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person over the age of eighteen (18) years then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

As noted by the district court, Davidson's service of process did not comply with the rule. Davidson does not provide any explanation on appeal for his non-compliance. In his objection to

Prior's motion, he argued that he only had Prior's law office address, and that he was unaware of Prior's home address. He further asserted, "it seems an unwieldy burden to place upon Davidson to discover a home address when Mr. Prior himself, on the face of his Motion, uses the very law office address where Davidson had him served by certified mail." This argument misunderstands the rule, as Davidson was free to personally serve Prior at his law office. There is certainly a distinction, as Prior argued below, between Prior as an individual and Prior's law office. Service upon one does not constitute service upon the other. The Rules of Civil Procedure are clear as to what is required, and, as the district court found, those requirements were not met.

### 2. Good cause

Davidson asserts that good cause exists such that he should be allowed "to re-serve Prior in person to properly re-join him as a defendant." Davidson argues that if service by certified mail was improper and the district court was correct to dismiss the complaint on that basis, he still could have personally served Prior within the six-month time period set forth in I.R.C.P. 4(a)(2). He contends, however, that the court dismissed his complaint on another ground, I.R.C.P. 12(b)(6), prior to expiration of the six-month period for service. While Davidson does not explicitly articulate why good cause exists to waive the six-month time requirement, it appears that he is arguing that because the district court also granted the motion to dismiss on the immunity ground, good cause exists to relieve him of the six-month time requirement as personally serving Prior would not have altered the outcome because of the court's dismissal of the complaint under I.R.C.P. 12(b)(6). Thus, he contends that should this Court conclude that the district court erred in dismissing the complaint on that basis, we should "also order that the six month time limit for service is waived for good cause." We are unpersuaded.

The district court did not dismiss Davidson's complaint as to Prior on the basis of I.R.C.P. 4(a)(2). Therefore, good cause was never argued to the district court. As noted, Davidson failed to provide any explanation for why he could not personally serve Prior. In any event, good cause does not exist to waive the time requirements.

If the summons and complaint are not served upon the defendant within six months after filing the complaint "and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice . . . ." I.R.C.P. 4(a)(2). There is no bright-line test in determining

whether good cause exists. *Martin v. Hoblit*, 133 Idaho 372, 375, 987 P.2d 284, 287 (1999). "[W]hether legal excuse has been shown is a matter for judicial determination based upon the facts and circumstances in each case." *Id.* The focus of the good cause inquiry is on the six-month time period following the filing of the complaint. *Id.* "If a plaintiff fails to make any attempt at service within the time period of the rule, it is likely that a court will find no showing of good cause." *Id.* at 377, 987 P.2d at 289; *see also Campbell v. Reagan*, 144 Idaho 254, 257, 159 P.3d 891, 894 (2007). Courts look to factors outside of the plaintiff's control including sudden illness, natural catastrophe, or evasion of service of process. *Martin*, 133 Idaho at 377, 987 P.2d at 289. Lack of prejudice is irrelevant to the good cause analysis. *Id.* at 375, 987 P.2d at 287.

At the hearing on the motion to dismiss, the district court indicated that Davidson would not be prejudiced by a dismissal pursuant to I.R.C.P. 12(b)(5) and 4(d)(2), as Davidson could simply cure the defect by complying with the rule. Davidson acknowledges on appeal that the dismissal on that basis occurred prior to the expiration of the six-month time requirement. However, Davidson did not avail himself of the opportunity to personally serve Prior. Rather, he waited until the court also dismissed the complaint on another ground. Davidson chose how to proceed with his case, and his failure to comply with the Idaho Rules of Civil Procedure does not support a finding of good cause. Moreover, the court's action in dismissing the complaint on another ground does not constitute good cause for why service was not made within the six-month time period.

## B.      Voluntary Dismissal of Claims Against Jesyca and Kathy

As noted, following the court's order regarding summary judgment, Davidson voluntarily dismissed the remainder of his claims against Jesyca and Kathy that related to statements made to third parties. The court understood Davidson's request as "simply dismiss[ing] the balance of the case but . . . reserv[ing] the right to go ahead and appeal any decisions [the court] had made concerning immunity or probably any other issues that [the court] had addressed, as well." It was requested that the dismissal be with prejudice, and Davidson did not object. The court ultimately granted Davidson's motion to dismiss with prejudice any remaining claims in the case. Davidson then appealed the order granting his own motion.

While Davidson acknowledges in his opening brief that he "requested, and was granted by the trial court, voluntary dismissal of all remaining claims not covered by partial summary

7

judgment so as to facilitate the undertaking of this appeal," he argues that the dismissal was not truly voluntary. Respondents argue that Davidson has not cited error or presented any argument or authority to overturn the dismissal order, *see Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997), that he is judicially estopped from claiming the trial court erred in entering a dismissal order at his request, *see Lawrence v. Hutchinson*, 146 Idaho 892, 900, 204 P.3d 532, 540 (Ct. App. 2009), and that the invited error doctrine bars Davidson's appeal of the dismissal order, *see Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). We agree.

Davidson had the opportunity to litigate the remainder of his claims but, because he believed he would not prevail at trial, requested that they be dismissed. The district court cannot be faulted for Davidson's choice to proceed in this fashion. Thus, the district court did not err in granting Davidson's motion to dismiss the remainder of the claims against Jesyca and Kathy with prejudice. Since Kathy was not involved in reporting abuse to authorities, as opposed to private parties, the voluntary dismissal operates to conclude all claims against her. However, Davidson's claims against Jesyca (and Benjamin) relating to false reporting remain and are addressed below.

## C. Summary Judgment on Claims Against Jesyca and Benjamin

Having concluded that the district court did not err in granting Prior's motion to dismiss or in granting Davidson's motion to voluntarily dismiss the remainder of his claims against Jesyca and Kathy, the only claims remaining are those with respect to the alleged false reporting of abuse by Jesyca and Benjamin, and whether the court erred in granting summary judgment. At the hearing on the motion for summary judgment, respondents argued, as they do on appeal, that they had a statutory duty to report child abuse, that they reported the alleged child abuse in good faith, and that they were entitled to statutory immunity because they reported in good faith. While Davidson did not directly respond to respondents' arguments, he did generally contest their allegations that any abuse occurred. The district court ultimately granted summary judgment to Jesyca and Benjamin on the claim that they were entitled to statutory immunity under I.C. § 16-1606.

On appeal, Davidson contends that the district court applied the wrong standards in granting Jesyca and Benjamin statutory immunity under I.C. § 16-1606. This appeal raises several issues, including: (1) who is required to report instances of child abuse under I.C. § 16-

1605; (2) to whom does the immunity from suit provision of I.C. § 16-1606 apply; (3) how does the immunity from suit provision apply; (4) the scope of immunity; (5) the role of the court versus a jury; (6) the proper standard for summary judgment in cases involving claims of false reporting of child abuse; and (7) application of the summary judgment standard to this case. Because we conclude that Davidson has demonstrated genuine issues of material fact such that his claim survives summary judgment, we need not address every issue presented in this appeal. Therefore, we address only the questions of whether Davidson's claim of false reporting of child abuse is to be tried to a court or a jury, whether the traditional summary judgment standard applies to such claims, and whether summary judgment was properly granted.

### 1.      Court versus jury

Before ruling on the motion for summary judgment, the district court raised, sua sponte, the issue of whether a portion of Davidson's case was to be tried before the court rather than a jury due to the fact that Davidson based his complaint, at least in part, upon provisions in the CPA.[1]  The court quoted I.C. § 16-1613(1), which provides that "[p]roceedings under [the CPA] shall be dealt with by the court at hearings separate from those for adults and without a jury." The court indicated that such proceedings "would include a petition . . . for civil damages as a result of the bad faith filings of claims of abuse."  The court also stated that, according to its reading of the relevant provisions, a cause of action arising under the CPA, including a claim for damages under I.C. § 16-1607, must be tried to a court and not a jury.

After receiving briefing from the parties on the issue, the district court ultimately determined:

> A grant of immunity is for determination by the court and not a jury and should be resolved as early in the proceedings as possible and, in any event, prior to trial.  See, e.g., *Rosenberger v. Kootenai County Sheriff's Department*, 140 Idaho 853, 856-857, 103 P.3d 466 (2004); also, *F.A., P.A., and M.N., M.A. & C.A. v. W.J.F., Jr. & S.F.*, 280 N.J. Super. 570, 579, 656 A.2d 43, 47-48 (Super. Ct. App. Div. 1995).

---

[1]      Davidson alleged in his complaint that respondents had made a number of false reports, and he specifically invoked the provisions of I.C. §§ 16-1606 and 1607, relating to false reporting, in his claim of conspiracy, and I.C. §§16-1605-1607, in his claim of negligence. Davidson also requested compensatory damages, "plus treble damages under IC 16-1607 if it is found that the allegations referred to herein were made falsely or with malice."

While the district court originally raised the immunity question in the context of the CPA, it ultimately relied upon *Rosenberger* and out-of-state case law in making its determination that the issue was to be decided by the court rather than a jury.

We agree with the district court that the question of immunity is for the court. The court's reliance upon *Rosenberger* and out-of-state case law, however, was misplaced. An appellate court may affirm a lower court's decision on a legal theory different from the one applied by that court. *In re Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990). Not only is *Rosenberger* factually distinguishable, but the legal issue addressed in that case bears little similarity to the issue presented here. *Rosenberger*, while addressing a question of immunity, did so in the context of whether police officers were entitled to qualified immunity in a 42 U.S.C. § 1983 claim alleging a violation of Fourth Amendment rights through excessive use of force during the arrest. We decline to extend the law applicable to excessive use of force claims to claims alleging false reporting of child abuse. Moreover, we are not bound to follow out-of-state case law, particularly where an Idaho statute controls the issue.

In this case, Davidson alleged that he was entitled to damages pursuant to I.C. § 16-1607. Idaho Code § 16-1607 provides:

> Any person who makes a report or allegation of child abuse, abandonment or neglect knowing the same to be false or who reports or alleges the same in bad faith or with malice shall be liable to the party or parties against whom the report was made for the amount of actual damages sustained or statutory damages of two thousand five hundred dollars ($2,500), whichever is greater, plus attorney's fees and costs of suit. *If the court finds that the defendant acted with malice or oppression, the court may award treble actual damages or treble statutory damages, whichever is greater.*

(Emphasis added.) This statute provides for liability in cases of false reporting of child abuse. The statute is clear that where the *court* makes a finding of malice or oppression, it may award exemplary damages. Because findings of fact, including those involving punitive damages, are typically for a jury to make, the explicit reference to the court making such a finding indicates that the entire matter is to be tried before the court. Additionally, as noted, I.C. § 16-1613(1) provides that procedures under the CPA are to be tried by the court. Consequently, the question of whether a person makes a report or allegation of child abuse knowing it to be false or reports in bad faith or with malice is to be tried to a court rather than a jury.

10

## 2. Summary judgment standard

Rather than applying the traditional summary judgment standard, the court set forth the standard as follows:

> Summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). The district court is to "liberally construe facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party." *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876 (1991) (citations omitted). However, issues of material fact do not preclude summary judgment on the basis of immunity from suit. See *Rosenberger v. Kootenai County Sheriff's Department*, 140 Idaho 853, 857, 103 P.3d 466 (2004); also, *May v. Southeast Wyoming Mental Health Center*, 866 P.2d 732, 738 (Wyo. 1993).

Thus, while the court acknowledged the traditional standard, it declined to follow that standard, instead relying again upon *Rosenberger* and out-of-state case law. With respect to what standard should apply to summary judgment proceedings in cases involving allegations of false reporting of child abuse, two approaches have emerged.

The first approach, employed by the district court in this case, is to dispense with the traditional summary judgment standard and simply allow the trial court to resolve the immunity question. *See May v. Southeast Wyoming Mental Health Center*, 866 P.2d 732 (Wyo. 1993); *see also F.A. by P.A. v. W.J.F.*, 656 A.2d 43 (N.J. Super. A.D. 1995). In *May*, the Wyoming Supreme Court, in applying their immunity provision, which includes a presumption of good faith, concluded:

> The well-known standard of review for summary judgments has only minimal significance here. Rather, the summary judgments in this case can be upheld on the basis of immunity. Therefore, we need not search the record to see if there are disputed material facts, nor need we examine in detail the materials in support of summary judgment or in opposition.

*May*, 866 P.2d at 738. Thus, the court in *May* opted not to apply the traditional summary judgment standard, choosing instead to employ a standard, pursuant to Wyoming's immunity statute, of whether the plaintiff had presented sufficient evidence to overcome the presumption of good faith or shown that the defendants did not act in good faith.

The New Jersey Superior Court in *F.A. by P.A.* relied upon *May*'s reasoning. In that case, the court determined that the legislature's intent to protect persons who report suspected

child abuse "can be easily frustrated if complying with the duty to report can subject the reporter to costly and protracted civil litigation." *F.A. by P.A.*, 656 A.2d at 47. The court held that summary judgment procedures should be used so that "immunity issues will be addressed and determined speedily without extensive and burdensome discovery and trial preparation." *Id.* The court also concluded:

> The use of an objective test [whether a reasonable person would have reasonable cause to believe that a child has been abused] should also facilitate speedy determination by way of summary judgment. Objective findings do not generally turn on such issues as intent, motive, credibility and the like, which often preclude the granting of summary judgment.

*F.A. by P.A.*, 656 A.2d at 47.

The second approach is that while a trial court is allowed to rule on issues of immunity, it still must apply the traditional summary judgment standard to determine whether there are any genuine issues of material fact with respect to whether a report of child abuse was made in good faith. *See e.g.*, *J.E.B., et. al. v. Danks*, 785 N.W.2d 741, 746-47 (Minn. 2010); *Yuille v. State Dept. of Social and Health Services*, 45 P.3d 1107, 1110-1111 (Wash. Ct. App. 2002); *Stratakis v. Ferncliff Manor Home for Handicapped*, 764 N.Y.S.2d 431, 432 (N.Y. App. Div. 2003); *see also* Danny R. Veilleux, *Validity, construction, and application of state statute requiring doctor or other person to report child abuse*, 73 A.L.R. 4th 782 (1989).

In *J.E.B.*, the Minnesota Supreme Court addressed the question of whether the trial court had properly granted statutory immunity at the summary judgment stage. The trial court had determined that because the determination of immunity involved mixed questions of law and fact, those questions were "left to the discretion of the trial court in the interest of judicial economy." *J.E.B.*, 785 N.W.2d at 747. The supreme court concluded that the trial court had used the wrong legal standard and that there was no "basis for departing from our traditional summary judgment standard." The court stated:

> Under the traditional standard, the district court is not to find facts by resolving disputes at the summary judgment stage, but is to determine whether, when the evidence is construed in the light most favorable to the party opposing summary judgment, there is a genuine issue of material fact.

*Id.* The court noted that the trial court's confusion may have resulted from its reliance on a previous Minnesota Supreme Court case stating, much like *Rosenberger*, that "[b]ecause the determination of an immunity's application is best decided by the trial court at the earliest

12

possible juncture, however, the trial court's determination necessarily will include mixed questions of law and fact." *Id.* The *J.E.B.* court held that this statement did not "stand for the proposition that the district court may resolve factual disputes at the summary judgment stage." The court further distinguished that case, by stating in that case, "[t]he factual predicate--the existence of good faith--was undisputed." *Id.*

The court noted that the trial court had entered judgment for the defendant because the plaintiffs "ha[d] not presented substantial evidence that indicates that the defendant acted in bad faith." *Id.* at 747-48. The court held that the "substantial evidence" standard was not the correct standard to apply on summary judgment. As such, the court determined that the granting of summary judgment based on statutory immunity depends upon whether, when construing the evidence in the light most favorable to the non-moving party, there is no genuine question of material fact on either of the two prerequisites to immunity: (1) that the defendant knew, had reason to know, or suspected that abuse occurred; and (2) that the defendant made her report in good faith. *Id.* at 748. The court concluded that if there is a genuine issue of material fact as to either of these prerequisites, then summary judgment is inappropriate. *Id.*

While we agree with the premise stated in *Rosenberger* that, whenever possible, questions of immunity should be decided early on in the proceedings, *see Rosenberger*, 140 Idaho at 857, 103 P.3d at 470, we conclude that this does not require departure from the traditional summary judgment standard. Moreover, the Idaho Supreme Court in *Rosenberger* employed a two-step analysis, specifically tailored to claims of excessive use of force, which is inapplicable to this case. We conclude, as did the *J.E.B.* court, that the traditional summary judgment standard applies in the context of liability of persons reporting instances of suspected child abuse. Therefore, the district court erred in applying a different standard.

### a. Application of proper standard

Summary judgment shall be rendered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). Moreover,

13

"[w]hen an action is to be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts." *Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991).

In its decision on the motion for summary judgment, the district court found that Jesyca and Benjamin had a "good faith reason to report what they did to the Canyon County Sheriff's Office." The court determined that because Benjamin's comments were related solely to the investigation into the report, he was immune pursuant to I.C. § 16-1606. The court also concluded that Jesyca was immune as to any statements she made concerning the report, as well as statements made in the child custody case and the petitions for domestic violence protection orders because they were related to the report.

The court ultimately concluded:

> There is no dispute that the relationship between Plaintiff and Defendants is acrimonious. Plaintiff filed a civil suit for damages against Jesyca Davidson, and Renato Davidson and Jesyca Davidson were involved in a custody dispute concerning their children. Jesyca Davidson also filed a petition for a domestic violence protection order pursuant to I.C. 39-6301, et. seq., based upon the allegations contained in her report. There is also no dispute regarding critical comments from Defendants directed toward Plaintiff. However, Plaintiff has offered nothing about the acrimonious relationship tending to show that the report to the Canyon County Sheriff was motivated by malice or bad faith. The comments directed by Defendants toward Plaintiff are consistent with a good faith belief that there has been inappropriate sexual contact.

As noted above, the question of whether a person makes a report of child abuse in bad faith is to be tried to a court rather than a jury. As such, on summary judgment the court is free to draw inferences from uncontroverted evidentiary facts. The district court in this case determined that the facts were uncontroverted and that Davidson had offered nothing tending to show that the report was motivated by bad faith. Were this the case, we could affirm the district court in spite of its deviance from the traditional summary judgment standard. However, we conclude that Davidson met his burden of demonstrating that there were genuine issues of material fact as to whether Jesyca made the reports in bad faith.[2]

---

[2] Generally, if the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment. I.R.C.P. 56(e); *Kiebert v. Goss*, 144 Idaho 225, 228, 159 P.3d 862,

14

Davidson argues on appeal that "the evidence here supports the contention that Defendants made false reports for revenge and to get Davidson to drop a small claims suit against Jesyca, and for his son (Renato) to drop attempts to gain sole custody over the girls." Davidson claims that "Jesyca began making unsubstantiated reports in March 2007 and then continued serially making at least six more unsubstantiated reports over the next several months." Davidson also asserts that "Jesyca filed the two sworn petitions for domestic violence protection orders not to protect the children, but for her own declared ulterior purpose of seizing custody of the two little girls." (Emphasis in original.) With respect to Benjamin, Davidson argues that "Ben's malicious motives were on full display in his testimonial statement to the police."

The evidence submitted by Davidson indicated that Jesyca and Renato, Davidson's son, were married on December 17, 2003, that they separated in October 2006, and that they were divorced on March 9, 2007. At some point in 2003, Jesyca and Renato confided in one another that they had both allegedly been abused by their fathers. Jesyca told her mother, Kathy, and her mother's partner about the alleged abuse. Prior to their marriage, Jesyca became pregnant with their first child, S.D. Davidson insisted that Jesyca and Renato get married "so that everyone's rights were protected." Jesyca became upset insisting that it was "none of [Davidson's] business and that [he] should stay out of it." Davidson represented that Jesyca's "overt hostility toward [him] continued to grow over all the years [he] knew her."

Renato stated that shortly after this incident, Kathy and her partner told him that they had told his mother, Davidson's wife, about Davidson abusing Renato. They planned to encourage her to obtain a protection order and a divorce. They also indicated that they intended to go to Child Protective Services in order to make a report so that Davidson could not be around his

---

865 (2007). The non-moving party must come forward with evidence, by affidavit or otherwise, that contradicts the evidence submitted by the moving party in order to survive summary judgment. *Kiebert*, 144 Idaho at 228, 159 P.3d at 865. In cases alleging false reporting of child abuse, however, the party making such allegations must establish that there are genuine issues of material fact regarding whether the report was made in bad faith in order to survive summary judgment. *See* I.C. § 16-1607. Here, Davidson did come forward with sufficient evidence, including affidavits and exhibits, to demonstrate genuine issues of material fact.

15

grandchild.  Renato stated that he had never been abused by Davidson and that he made that statement to Jesyca under the influence of alcohol and drugs and due to her confiding in him about her own father's alleged abuse.

Shortly before the divorce, on March 6, 2007, the Department of Health and Welfare received a referral regarding alleged abuse of S.D.  The Department identified the issue being investigated as possible bruising of S.D.'s groin and leg area.  The case was determined to be unsubstantiated as the mark was the result of S.D. putting lipstick on that area.  While Davidson contends that Jesyca and Kathy made the report, the exhibit included in the record is redacted and there is no indication as to who made the referral.  Following the divorce, in April 2007, Davidson filed a claim against Jesyca in small claims court for money that she allegedly owed the family business.  Davidson indicated that an incident occurred in May 2007 after leaving the courtroom in that case.  He stated that while walking through the parking lot, Jesyca passed him in her vehicle and made a slashing motion over her throat.

Thereafter, on June 25, 2007, Renato indicated that Jesyca was in court being sentenced on a DUI conviction occurring in Ada County.  Renato had asked Davidson to attend the hearing and report back on the outcome.  Davidson allegedly reported to Renato that Jesyca had been sentenced to receive some jail time.  Renato stated that in talking with Jesyca, she denied having to go to jail and stated that Davidson was lying.  Renato indicated that he started making preparations to obtain full custody of the children due to Jesyca's behavior.  The following day, on June 26, 2007, the Department received another referral regarding alleged abuse of S.D.  The report indicated that Jesyca was concerned about a change in her children's behavior after visits with Renato.  While this exhibit was also redacted, it indicates that Jesyca expressed concern about Renato exposing the children to Davidson due to his alleged previous molestation of Renato.

Renato stated that around Thursday, July 12, 2007, Jesyca's mother, Kathy, dropped the children off at daycare and that she later picked them up at Renato's home on Sunday evening.  Renato stated that he spoke with Jesyca on the morning of July 17, 2007, about what had happened, and Jesyca indicated that she had gone to jail.  Renato stated that she should not have withheld the children from him and "she said words to the effect that she had to because she thought me and my Dad were out to get her.  She also said that this was how it was going to be from now on."

That evening, Jesyca and Benjamin took S.D. to the hospital where they related the incident that spawned this litigation. The hospital records submitted by Davidson as exhibits show that, in addition to relating the incident to hospital personnel, Jesyca also reported that she had "called CPS two weeks ago to file a complaint but she's not heard anything back from them." Renato, unaware of the report of alleged abuse, filed a pro se motion to modify the custody agreement between himself and Jesyca on July 18, 2007. Thereafter, Jesyca and Benjamin made a report, as noted above, to law enforcement on July 19, 2007, and Jesyca subsequently sought protection orders in the custody case against both Renato and Davidson.[3]

Davidson also stated that on July 22, 2007, he spoke with Kathy on the phone regarding Jesyca's actions. Kathy allegedly stated, "You know you did it. We're going to prove you did it. You molested [S.D.] You know it, and I know it, and you might as well admit it because soon everyone else is going to see it too. You'll see. You'll see. We'll all see when the police come for you and I'm going to be there every step of the way to see you go down. You'll see!" Davidson stated that following this conversation, Jesyca and Kathy allegedly came to his home and began arguing with his son, Renato, regarding custody of the children, and Renato indicated that he wanted to keep the children until the judge could assess the situation of Jesyca allowing the children to "run around naked in front of some strange guy." Davidson stated that he heard Kathy yell at his son, "Oh, we're going to make some trouble for you all right, there is going to be big trouble behind this. You and your Daddy both are going to end up in jail!"

Based upon the evidence before the district court, there is a genuine issue of material fact as to whether Jesyca reported her allegations of child abuse in bad faith. While the court acknowledged the acrimonious nature of the parties' relationship, it concluded that Davidson had not demonstrated how that relationship tended to show that Jesyca's reports were motivated by

---

[3] Davidson contends that the district court inappropriately relied upon *Rosenberger* for the proposition that it could only look to information available to the reporting person at the time the report was made when making the determination of whether the report was made in good faith. *Rosenberger* was evaluating the objective reasonableness of an officer's actions in an excessive use of force claim. Such an evaluation must be based upon the information available to the officers at the time. By contrast, a good faith determination is concerned with the question of intent, which is demonstrated through circumstantial evidence. An acknowledgment of false reporting after the report has been made would clearly show bad faith. As such, the district court's reliance upon *Rosenberger* on this point was misplaced.

17

bad faith. However, the substance of some of the prior allegations of child abuse to the Department, as well as the timing of those reports, raises genuine issues of material fact regarding Jesyca's motivation. According to the evidence, the day after Jesyca had been sentenced on her DUI, which may have created problems for her relative to custody, she made a report to the Department indicating concerns about Renato exposing the children to Davidson. Moreover, Jesyca took S.D. to the hospital right after getting out of jail and after Renato told her that she should not have withheld the children from him. The evidence demonstrates that there are genuine issues of material fact regarding whether Jesyca made the reports in an attempt to gain some advantage in the custody dispute and exact revenge upon Davidson. Therefore, the district court erred in granting Jesyca partial summary judgment on the claim of false reporting of child abuse.[4]

With respect to Benjamin, Davidson submitted, as evidence, an interview Benjamin underwent with the police, as well as a deposition. Benjamin acknowledged that Jesyca and Kathy had told him Davidson had abused Renato when he was a child. Davidson contends that Benjamin's interview with the police demonstrates his "malicious motives" as he "openly expressed his hatred, bias, and prejudice against [Davidson]." While the interview does illustrate that Benjamin stated that he has a "hate thing for molesters," he did not directly express hatred for Davidson. He maintained that although he did not see S.D. expose herself, when he asked her who taught her to do that, she said "Grandpa." Davidson's conclusory statement that Benjamin hates him, with little more, is insufficient to demonstrate a genuine issue of material fact that Benjamin made allegations of child abuse in bad faith. Therefore, the district court did not err in granting Benjamin summary judgment.[5]

---

[4] By this opinion, we are not expressing any view with respect to the scope and application of the immunity provision, I.C. § 16-1606. We simply conclude that there are genuine issues of material fact on whether Jesyca reported in bad faith.

[5] Davidson also argues at length that respondents' evidence was inadmissible due to a number of inconsistencies. While there may have been inconsistencies in the various documents submitted by respondents, which may be relevant for the purposes of showing questions of fact, such inconsistencies do not render the evidence inadmissible, but rather go to the weight of such evidence. Davidson also argues that the evidence was inadmissible on grounds of hearsay, leading questions, and I.R.E. 404(b). The record does not demonstrate that the evidence was offered for inappropriate purposes or that the district court erred in admitting the evidence.

18

**D.      Attorney Fees**

Kathy argues on appeal that she is entitled to attorney fees.  An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995).  Because Davidson voluntarily dismissed his claims as to Kathy, his appeal trying to re-raise those claims is frivolous.  Therefore, costs and attorney fees are awarded to Kathy.

## III.

## CONCLUSION

The district court did not err in granting Prior's motion to dismiss pursuant to I.R.C.P. 12(b)(5) because Davidson failed to comply with I.R.C.P. 4(d)(2) in serving Prior.  Moreover, Davidson's failure to personally serve Prior does not constitute good cause to suspend the service requirements of I.R.C.P. 4(a)(2).  The district court did not err in granting Davidson's voluntary motion to dismiss the remainder of his claims against Jesyca and Kathy with prejudice.  The district court did not err in granting Benjamin summary judgment on the claim of false reporting of child abuse.  The district court did, however, err in granting Jesyca partial summary judgment because there were genuine issues of material fact as to whether Jesyca reported in bad faith.  Therefore, we reverse and remand the case for a trial on that issue.  We award costs and attorney fees to Kathy.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

19